BONHOMIE & HATTIESBURG SOUTHERN R. CO. v. FLY, Collector of Internal Revenue.

Civ. A. 1553.

United States District Court
S. D. Mississippi, Jackson Division.

Nov. 24, 1952.

Garner W. Green, of Green, Green & Cheney, Jackson, Miss., for plaintiff.

Joseph E. Brown, U. S. Atty., and Edwin R. Holmes, Jr., Asst. U. S. Atty., Jackson, Miss., for defendant.

THOMAS, District Judge.

The Court, sitting without a jury, having heard the pleadings, statement of the case by attorneys for the respective parties, evidence, both oral and documentary, introduced by the parties hereto in open court, and argument of counsel for the parties hereto, and having considered the same, makes the following Findings of Fact:

1. This is a civil action by Bonhomie & Hattiesburg Southern Railroad Company, herein called "Railroad", to recover taxes claimed to have been wrongfully imposed by and wrongfully collected pursuant to an improper interpretation of United States Internal Revenue Code, 53 Stat. 1 et seq., Title 26 U.S.C.A. § 1 et seq. These taxes were paid under protest and are now sought to be collected under a proper interpretation of said statute from Eugene Fly, Collector of Internal Revenue

for the District of Mississippi, herein sometimes called "Collector", and on the face of the complaint involves the construction of said Federal statute, said complaint asserting a right alleged to arise therefrom.

2. That the Railroad is a Mississippi corporation, chartered by the State of Mississippi before 1930, and pursuant to due proceedings before the Interstate Commerce Commission, the Mississippi corporation acquired the Railroad from Gulf, Mobile & Northern Railroad Company under a certificate of public convenience and necessity before said Commission. Its capitalization and the issuance of $235,000 First Mortgage Bonds, with the interest return prescribed, were duly approved and operation of said Railroad then began which has since continued, having been as to its accounting methods in strict conformity to the requirements of the Interstate Commerce Commission under the Transportation Act, 49 U.S.C.A. § 1 et seq.

3. Being without railroad equipment, engines, car shops, coal chutes, and other property, requisite in its operation, these were lawfully leased from the Tatum Lumber Company, hereinafter sometimes called, with changes in personnel, "Tatum".

4. Tatum Lumber Company, as at 1919, was a co-partnership engaged in, among other things, the extensive operation of a sawmill at Bonhomie whereat was a large planing mill and commissary, among other interests. Said co-partnership was initially composed of W. S. F. Tatum, husband and father, Rebecca O'Neal Tatum, wife and mother, and W. O. Tatum, W. S. Tatum and F. M. Tatum, sons and brothers. In 1939, Mrs. Rebecca O'Neal Tatum died intestate and her interest passed to her husband and her sons, the partnership continuing, and in 1949 W. S. F. Tatum died testate with, as to these properties, a testamentary disposition to his sons, the partnership still continuing.

5. That in the year 1922 the accounting system of Tatum was regularly set up by R. G. Wooten, a Certified Public Accountant, and on behalf of Tatum he remained in charge thereof with supervision thereover until his death in the year 1947.

6. Since incorporation of the Railroad, the stock, being 1,000 shares with par value of $100, and the entire issue of First Mortgage Bonds, aggregating initially $235,000, was owned by said Tatum. They have continuously been so owned and are now so owned.

7. That said Railroad when initially acquired by Tatum required rehabilitation to an amount equalling approximately $127,000. Its rail line though properly constructed roughly parallels Leaf River and on said line there are four trestles, high and long, constructed of wood, subject to destruction both by fire and by the change in the course of said River, against which contingencies to conserve the public welfare appropriate reserves must be made and in good faith by the officers of the Railroad have been made, said amounts as shown by the corporate records being deemed under business prudence requisite.

8. That in 1944, and also in 1948 and 1949, Eugene Fly was Collector of Internal Revenue for the United States in Mississippi.

9. That the Railroad operation was from Bonhomie to Beaumont, Mississippi, a distance of approximately 26 miles, serving Camp Shelby and the communities of Hattiesburg, McCallum, Bellville, Mahned, New Augusta, Ferguson and Beaumont on its rails and was a connecting link between the Gulf, Mobile & Ohio Railroad Company at its Eastern end and the Southern Railway System, the Illinois Central Railroad System and the Mississippi Central Raiload Company at Hattiesburg.

10. That in 1944 Railroad had outstanding and unpaid $185,000 of First Mortgage Gold Bonds, bearing interest at the rate of 6%, being part of an original issue of $235,000 First Mortgage Gold Bonds (but now solvable in any lawful currency), of which outstanding and unpaid amount the sum of $85,000 was due, owing, unpaid and in default, and in December 1944 an additional $50,000 of said bonds matured and are unpaid.

11. That interest on said bonds was paid from their issuance up through 1934, but thereafter has remained unpaid and during the year 1944 interest in the sum of $11,100 accrued, making a total of unpaid interest in the sum of $127,229.32. Said bonds were duly extended.

12. That in 1944 Railroad was indebted to Tatum for due and unpaid open account in the sum of $84,644.87 and in the year 1944 interest on said unpaid open account accrued in the sum of $3,385.80, making a total of due and unpaid interest in said open account in the sum of $55,919.17. Said open account was initially $119,274.31 and interest thereon was at the rate of 6% per annum and interest was paid on said open account through the year 1928 but not thereafter.

13. That prior to the end of the year 1944 said Railroad had invested $55,000 in United States Government bonds, and held the same at the end of the year 1944.

14. That a nominal working capital demands at least $50,000 cash.

15. That Railroad leased from Tatum engines, car shop, coal chute and other property, in accordance with the regulations of Interstate Commerce Commission, whereon there accrued in 1944 rent in the sum of $5,944.89, making a total of accrued and unpaid rentals as at December 31, 1944, in the sum of $104,934.06. Said sums were proper and rental was paid through the year 1928 but thereafter has remained unpaid.

16. That the income accounts of Railroad for the calendar years 1930 to 1949 show that said Railroad had a loss except in the years 1944 and 1945, the year 1944 showing approximately a net income of $20,392.72.

17. All of these records were in strict accordance with the requirements of the Interstate Commerce Commission under the Transportation Act and due reports were annually made thereasto to the Commission and thereover the corporate officials exercised appropriate discretion.

18. The method of accounting employed by Railroad in 1944 was the accrual method or basis. It deducted in its annual return of net income for that year the accrued interest on First Mortgage Bonds in the sum of $11,100, accrued interest on open account in the sum of $3,385.80, and equipment rentals in the sum of $5,944.89, and two items of interest on previously accrued and unpaid interest and rentals, all of which were due and owing to Tatum but not paid. These amounts under the accrual method of keeping accounts, if not deducted during this particular year, were never deductible though they represented lawful obligations of the Railroad accruing expressly pursuant to valid contracts.

19. That a Field Representative of the Internal Revenue Department, upon examination of the 1944 income tax return of Railroad, disallowed the said accrued items as deductions, whereupon an assessment was made against Railroad for additional tax in the sum of $19,781.77. This assessment, together with interest in the sum of $4,500.37 (a total of $24,282.14), was paid under protest on December 30, 1948, and a claim for refund therefor, duly and properly made, filed on the same day. Thereafter, on April 16, 1949, an additional assessment of $2.56 interest was made and payment under protest was made on April 16, 1949, with claim for refund therefor duly filed. Subsequently thereto both claims for refund were denied.

20. Initially the operations of Tatum were concerned with lumbering. Timber was manufactured into lumber and marketed by the Tatum Lumber Company and in its lumbering operations inventories were extensively used both as to the lumber and as to the commissary, and said method of accounting fully and truly represented all transactions of Tatum thereasto had. Said method of accounting was designed by Mr. Wooten for Tatum as the accrual method, and the returns of net income filed on behalf of Tatum so designated it, except that, by inadvertence on returns for the years 1942–1943 it was not so designated for those years though it had not in any way changed. In fact the Internal Revenue Department in 1937 thus characterized said system, R. 222:

"Other Information: As stated in prior reports the taxpayer keeps detailed records of all its transactions but does not keep same in the manner of ordinary double entry bookkeeping. The records of expenditures, disbursement, sales production and in fact all are kept in even greater detail than ordinarily found, however the summarization is made each year on working papers, etc. and properly and correctly placed on an accrual basis."

21. While it is true that the last timber was cut in 1938 and the planing mill discontinued about 1942, dispensing thereby with the lumber inventories, there remained the commissary inventory and the ownership of 65,000 acres of land whereon timber was growing and wherefrom ultimate realization thereasto will be and other items demanding, to properly reflect income, an accrual basis. No criticism or change in the accounting method of Tatum was suggested other than the demand made for the amount herein sued for which was claimed to be lawfully owing to the United States as tax.

22. Facts admitted by the pleadings and stipulated by the parties are likewise found by the Court.

23. No fraud of any kind is even sought to be imputed to Tatum.

24. That the Collector of Internal Revenue disallowed the deductions of accrued items by and made additional assessment against Railroad under Section 24(c) of the Internal Revenue Code, 53 Stat. 16, amended Oct. 21, 1942, 4:30 p. m., E. W. T., c. 619, Title I, §§ 121(b), 127(b), 129, 130(a), 56 Stat. 819, 826, 827, herein called "Section 24", claiming that Subsection 2 thereof applied to Tatum.

25. That in 1944 the books and records of Tatum were kept on the accrual basis or method of accounting.

26. That Tatum, in keeping its books and records, employed the same method of accounting from the year 1922 through the year 1949, both inclusive.

27. That as to the accruals for the year 1944, the said three accrued items, being interest on First Mortgage Bonds in the sum of $11,100, interest on unpaid open account in the sum of $3,385.80, and rentals on equipment in the sum of $5,944.89, were and are deductible by Railroad in its 1944 tax return, and were properly accounted by Tatum.

28. That it was admitted by the parties that the items of interest on accrued but unpaid items of interest and rentals were properly disallowed.

The Court makes thereon the following Conclusions of Law:

1. The Court has jurisdiction of the parties and the subject matters.

2. Subsection 2 of Section 24(c) of the Internal Revenue Code is not applicable in this cause as to the method of accounting of Tatum.

3. That Section 24(c), Internal Revenue Code, cannot be invoked against Railroad as to accrued items due to Tatum, even though unpaid, by reason of Subsection 2 thereof.

4. That the 1942 and 1943 net income reported in the returns of Railroad for those years have been recomputed as a basis for the judgment hereinafter rendered by the elimination of the accrued but unpaid items of interest and rentals which were not properly deductible.

5. That using the recomputed figures for the tax years 1942 and 1943, based upon the exclusion of the accrued items of interest on unpaid interest and rentals, Railroad was and is entitled to use the net operating loss carry-overs from 1942 and 1943 as recomputed as by law provided.

6. That Railroad, after recomputing its 1944 income tax, omitting as a deduction the disallowed items, was erroneously assessed for taxes in the sum of $19,781.77 and interest in the sum of $4,502.93.

7. That Railroad is entitled to recover from Eugene Fly, Collector of Internal Revenue, the amounts wrongfully assessed and collected from Railroad as income taxes for the year 1944 and interest thereon to the date of payment, being the sum of $24,282.14, together with interest, as by law provided from December 30, 1948, and the sum of $2.56 together with interest, as by law provided, from April 16, 1949.

8. That these findings of fact and conclusions of law be made a part of the judgment to be herein rendered, including the stipulation entered into in open court between the parties as to Causes Nos. 1585, 1628, 1629, 1753 and 1754.

9. That judgment may be rendered for plaintiff in the sum of $24,282.14, with interest from and after the 30th of December, 1948, as the law doth allow; and that judgment may be rendered for plaintiff in the sum of $2.56, with interest from and after the 16th of April, 1949, as the law doth allow.